IN THE UNITED STATES' DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
APR 21 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| AZUBUKO - <br> Plaintiff <br><br> vs. <br><br> DENIS RIORDAN – DISTRICT DIRECTOR OF UNITED STATES' DEPARTMENT OF HOMELAND SECURITY - <br> Defendant | CIVIL ACTION NUMBER: <br> 05-095-SLR |

**PLAINTIFF'S FIRST MOTION FOR RECONSIDERATION**

The Plaintiff did receive the Court's "MEMORANDUM ORDER" stamp-date and hand-dated April 4th – 2005, assumed to be postmarked self-same date on Saturday – April 09th – 2005. These would be the Plaintiff's succinct responses to the issues, which were the Court's *ratio-dencidendi* (primary and secondary bases for dismissal):

01)   The Court's should not base its decision on the cases the Plaintiff had filed. They were <u>extraordinarily</u> legitimate. Was it a crime to do so presently? The Plaintiff was entitled for freedom of speech, right of petition for redress when aggrieved, though discriminated. [First Amendment] The Plaintiff had been above been a terrorist! The Court would not understand! One could laugh mechanically at others' funeral, but the enamor ceased when the funeral became the one of one's relative. In essence, s/he who was absent from a funeral would be incapacitated to exhume with efficiency. [Proverb] The Plaintiff filed the cases, but justice was denied characteristically. One scintillating point was that nobody had filed malicious prosecution against the Plaintiff individually and collectively. From the names of the Defendants, one would not intelligently reason in the least that they were unable to sue the Plaintiff, because they lacked human or financial resources to sue the Plaintiff for suing them maliciously. Since that had never happened, the Court should let well alone. Factly, "the least said the better" and "the least said soonest mended." The judicial system thunderously cried for

attention. Glory, the Congress had just noticed it following recent late Mrs. Terri Scherievo's assisted-death.

02) The Plaintiff by and large did not file the suit primarily under 42 USC Section 1981 [speaking under subject to correction] Could the Court provide the Plaintiff with coversheet to the case? Consciously, the suit was filed under 28 USC Section 1361. The Plaintiff would particularize on the 42 USC Section 1981 as Judge Robinson considered it the basis for the suit. However, the case had significant bearings on 8 USC Section 1422 as the Court rightly affirmed central to the Plaintiff's Complaint.

03) The Plaintiff thanked the august Court immeasurably for approval of the Plaintiff's application for fee waiver. If it were not for the chronic palpable insidious and invidious failure of the judiciary, the Plaintiff had spent considerable years in the classrooms, so much so that the Plaintiff ought not to be applying for the matter in question. In life, one should not trivialize the invaluability of humility. An excerpt read: "Be modest. Much was achieved before one's birth." Whoever disagreed with that pointedly lacked intellectual humility, intellectual courage and faith-to-reasons. Indeed, life had been known to be mercurial [in nature]

04) How could the Court conclude that the Plaintiff's Complaint was without "…claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief pursuant to 28 U.S.C. Section 1915(e) (2) (B)-1915A (b) (1)." If the Court would agree with the Plaintiff, the reasoning was flies-blown or resoundingly defective. It was commonly said that "one talks nineteen to the dozen," but the Plaintiff would be afraid to saying that the Court interpreted nineteen to the dozen on the case. The Court's sweeping conclusion markedly deviated from the law. The Plaintiff was not the author of the law, in any shape or form. If an inherited property were distributed in the darkness, it would seem as if the *primogeniture* law was the barometer for the distribution or allocation process. [28 USC Sections 1346(b) 1982, 1357 and 1361; *von Kettler et al. v. Johnson*, 57 Ill. 109 (1870); *United States v. Murphy*, 768 F.2d 1518, 1531 (7th Cir. 1985); *Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828); *United States v. Will*, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1888); *Cohens v. Virginia*, 19 U. S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)]

05) On <u>immunity</u> from prosecution, the dichotomized or two-tongue in one mouth 11th Amendment originally intended it for States' Officials. From the self-same source, there was a counter provision. [*Suprme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980); *Kevin Chen v. Superior Court*, Court of Appeals, 2d Cir. (April 10th, 1997); *Scheuer v. Rhodes*, 416 U.S. 232 (1974)]

06) It would be tantamount to knowingly deprivation of Equal Protection and Due Process Clauses for the Court to have the propensity that "if a claim is based on facts that provided no basis for the granting of relief by the court, the claim must be dismissed." That would be crass deception if not hypocrisy if left unchecked. The Court in essence was saying that there was smoke, but no fire. The syllogism was diametrically unintelligent and mountainously wrong. If the Court listened, it would definitely heard the voice of the Plaintiff. The case ought not to be condemned too. "The standard of determining whether an action is frivolous is well established. The Supreme Court has explained that a complaint is frivolous "where it lacks an arguable basis either in law or fact." Reiteratively, it was a pernicious argument or reasoning by and large. The Court should feel its ears burning or be sensitive!

07) Putting aside the "less stringent standards than formal pleading drafted by a lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" On more scores than one, the Plaintiff painstakingly stated the relieves he sought from the lawsuit. The Court's "hear no evil and see no evil" deprived the judiciary human face. Was that a desirable image? The relieves the Plaintiff sought [for] thunderously cried for attention and if the Court shamed that it did not see the rationales for them, its goal and missions meant something else. The case did not call for any jurisprudence tokenism. Granted that the Court was superlatively right in its patronizing decision, the determination should be left for the jury. The Court as an "Intelligent Bystander" should set the case in motion for jury trial and the verdict would be <u>markedly</u> different from what was fashioned. The Plaintiff indeed **demand** for jury trial in the Complaint. What qualified others for jury trial and disqualified the Plaintiff? Look at the cases the Plaintiff had filed and the Plaintiff had never been granted jury trial.

What was the fear for? The then Apartheid South Africa! *Soweto* justice, indeed! The Plaintiff had been tirelessly and timelessly called "filer of malicious and frivolous cases." The Plaintiff considered that provocative, but simultaneously, the Plaintiff was careless of the unintelligent or uninformed perception. Factly, it was a construction of a reality. "How large will be large?" There existed a remedy for malicious prosecution – "malicious lawsuit." Since that never happened, the Plaintiff was on the right side of the law, at all times.

08) On "naturalization decision," the Plaintiff engaged on "… rambling recitation of events, ….! How else would have a reasonable and prudent person explained the surrounding circumstances, which the Plaintiff failed? Certainly, "… defendant Denis C. Riordan, District Director of the Department of Homeland Security, wrongfully "nullified" his "Naturalization Oath Ceremony" based on alleged inaccurate information regarding prior arrests." The Plaintiff was scheduled for the oath of citizenship in April 2004, but was arrested on March 6th, 2004 for alleged assault and battery. Did an arrest and without proven guilty <u>beyond any reasonable doubt</u> constituted "failure to establish good moral character?" An Accused was not guilty until given amplest chance to confront her/his Accuser/s. Was that not the traditional notion of fair play and substantial justice? What justified the Defendant's swop of the horse in the mid-stream? Could it be that the Defendant heard the voice of John the Baptist to reach that conclusion? If it were so, then, the Defendant knowingly hit the Plaintiff below the belt and such was diametrically illegal or unlawful.

09) The Court got hold of the wrong end of the stick. The Defendant was provided with dismissal evidence of the arrest in March dated June 19th, 2004. The 1989 false accuse of assault and battery and 1992 suspension of driving license were immaterial owing to statute of limitations. The statute on immigration and naturalization provided for it – seven-year limit. The Plaintiff was not ashamed of the incidents, because there was nothing to be ashamed. The driving suspension, at a point, there was an agreement to pay the Plaintiff a $1.00 not to commence proceedings against the Insurance Company and its Agents: sadly, the $1.00 was not paid, but the license was reinstated. The Plaintiff did not major in flogging a dead horse or prostitution of time and energy. The Plaintiff upon his honor furnished the Defendant with the most current

documentation associated with the crassly unintelligent arrest and prosecution. Consequently, the Plaintiff requested for a hearing. The procedural hearing associated with enormous filing fee and the Plaintiff petitioned for a fee waiver and it was denied. Therefore, how could it be said "Therefore, [plaintiff] failed to meet the burden of demonstrating that [he has] been and continues to be a person of good moral character." The question remained the same! Who frustrated the Plaintiff's ambition or process of demonstration of a person of good moral character? The Defendant did that, but the Court had exonerated the Defendant from the responsibility precociously.

10) The Court's stance of reasoning that the Plaintiff failed to provide necessary information for "a person of good moral character" hinged on "exhaustion of administrative remedies." It was not mandatory, but directory prior to commencement of judicial review. Glory, it was not an issue without precedents and the Plaintiff was not ignorant of them. By and large, it seemed that the Court took an extraordinary interest to flutter the dove-cotes, but it would be incumbent upon the Defendant to provide the Court with hand holding as it had proven in/directly that it needed it. Indeed, it was not a case of "teaching one's grand mother how to suck eggs." Precedents proved beyond doubt that exhaustion of administrative remedies was not a fatal flaw. [*Myers v. Bethlehem Shibuilding Corp.*, 303 U.S. 41, 50-51 (1938); *McCarthy v. Madigan*, 503 U.S. 140 (1992)] The Third Circuit's ruling would be useful and helpful! [*Rice v. United States* of *America – Department of Alcohol, Tobacco and Firearms* (No. 94-1547) established in favor of the Plaintiff resoundingly what the Plaintiff drove at devoid of circumlocution and tergiversation. Excerpts from Rice's case read:

"To decide an exhaustion issue "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."

"Against this backdrop, we can think of few administrative remedies that would be more inadequate than the one present by BATF. Indeed, little to no benefit could be achieved by requiring further exhaustion. Therefore, under all these circumstances, we hold that Rice need not exhaust administrative remedies to invoke the judicial review provision of section 825(c). We thus will reverse the district court's order dismissing Rice's statutory claim for lack of jurisdiction."

11) The Plaintiff would like to speak to the Court without water in his mouth on "Although it is unclear from plaintiff's filings whether a review hearing was

conducted or whether another decision was issued, in light of the instant action ..."
There was no hearing owing to the Plaintiff's incapacitation from the payment of the
$250.00 filing fee. The next information from the Defendant was that since the Plaintiff
was unable to meet the requirement for the so-called administrative hearing fee, the
Plaintiff could reapply in 2009 [speaking under subject to correction] The denial of the
Plaintiff's application remained unchanged, because the Plaintiff was tired of the
Defendant using the Plaintiff as a cash cow or the Defendant's systematic condemnation
of the Plaintiff to *unjust enrichment* and *unconscionability*. Prior to the filing the
application in question, the Plaintiff had filed two previous applications for citizenship.
The second one was unsuccessfully processed, because the Defendant negligently mailed
the notification to a wrong address despite writing the Plaintiff with preferred address
[earlier] Whose fault was it?

    12)    The august Court had recourse to jurisdiction saga. Venue and jurisdiction
were superlatively right. However, the Court was reticent on venue. The Plaintiff had
been denied federal employment central to, not being an United States' citizen, though
unconstitutionally. No law provided that one had to be an United States' citizen to be a
federal employee. The 9th Circuit ruled on that following airport employees that those
who had to work at the California airports had to be the United States' citizenry. The
crusade for that was flatly unconstitutional. [14th Amendment] Permanent resident was
entitled for federal employment just like the citizenry. The defects to Permanent
Residents were the United States' [vice] presidency of the United States. [14th
Amendment] The truth could be tested, at all material times. Feelings would not be
equated with critical and creative thinkings." Sadly, substitution of thinkings for feelings
had been a common knowledge. If employment associated with the citizenship, then, it
would be intelligent to argue that the case associated with AntiTrust. [Title 15] Many
sections justified the Court's jurisdiction. [15 USC Sections 4,9,15,22,26 and 37; The
Clayton Antitrust Act (1914) Sections 12 and 13] The Third Circuit made it clear! [The
U.S. Law Week – Third Circuit Broadly Construes Clayton Act," Volume 72 Number 32
Tuesday, March 2, 2004 ISSN 1522-4317] Excerpts on jurisdiction and "*Expanded
Venue Intended*" read, thus:

"Section 12 of Clayton Act, which provides that antitrust suit against corporation may be brought in any district where corporation is "inhabitant," "found," or "transacts business," and that "all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found," authorizes worldwide service of process and personal jurisdiction based on alien corporation's contacts with United States as whole, rather than with forum state."

"The Third Circuit affirmed both rulings. Section 12 of the Clayton Act provides: Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district where it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. The second clause "authorizes nationwide, indeed worldwide, service of process on a defendant corporation in federal antitrust litigation" wherever it is doing business, the court said. The issue was whether the venue provision in the first clause must be satisfied before worldwide service of process becomes available."

13) The Court could exercise *in personam* jurisdiction over Defendant consequent upon the Plaintiff's proverbial institutionalized judicial discrimination in Massachusetts' State and Federal Courts. The unconstitutional condescension typified ***"UNDUE BURDENS"*** and ***"SUBSTANTIAL OBSTACLES."*** [*Planned Parenthood of Southern Pennsylvania v. Casey*, 505 U.S. 833 (1992). More, in the case of *Baltin v. Alaron Trading Corp.* (11th Cir. No. 96-5123) (appealed from the United States' District Court for the Southern District of Florida No. 96-8195-CV-KLR, Kenneth L. Ryskamp, Judge) spelt out the bases for federal courts' exercise of jurisdiction. An excerpt read:

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 USC Section 1331; or (3) diversity jurisdiction pursuant to 28 USC Section 1331(a). See *Klein v. Drexel Burnham Lambert*, 737 F.Supp. 319, 323 n. 11 (E.D.Pa. 1990). In this case, the district court did not have any of the three types of subject matter jurisdiction."

14) By and large, the Court should not quash the case on the basis of lack of jurisdiction. That would be infeasible taking everything into account. There existed nationwide or national contacts jurisdiction consequent upon the Fed. R. Civ. P. 4. Well, the Plaintiff needed not to worry, because of the Third Circuit's ruling on that. The Court should not be fastidious! However, the Plaintiff would go extra miles to ensuring that Burger King's or abracadabra jurisprudence would not prevail. Excerpts on jurisdiction associated with BCCI Holding (Luxembourg), S.A. read:

"*See, e.g., Lee v. City of Beaumont*, 12 F.3d 933, 937-38 (9th Cir. 1993 (assuming existence of personal jurisdiction); *Feinstein v. Resolution Trust Corp.*, 924 F.2d 34, 40-41 (1st Cir. 1991) (skipping personal jurisdiction to decide RICO claim on merits); *see also Smith v. Avino*, 91 F.3d 105, 108 (11th Cir. 1996) (bypassing subject matter jurisdiction); *see generally Browning-Ferris Industries of South Jersey, Inc. v. Muszynski*, 899 F.2d 151, 154-60 (2d Cir. 1990) (discussing assumption of jurisdiction)."

"In addition to the district court in the case at bar, a number of district courts in this circuit have concluded that an independent due process analysis is required in cases involving nationwide service of process provisions and domestic corporations. *See, e.g., Willingway Hospital, Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102 (S.D.Ga. 1994); *Duckworth v. Medical Elctro-Therapeutics, Inc.*, 768 F.Supp. 822, 830 (S.D.Ga. 1991); *Cannon v. Gardner-Martin Asphalt Corp. Retirement Trust-Profit Sharing Plan*, 699 F.Supp. 265, 267-68 (M.D.Fla. 1988)."

"Were we forced to decide this issue, we would conclude, for reasons discuss infra, that Panama's RICO claim is not "so insubstantial, implausible, or otherwise completely devoid of merit" as to deprive Panama of the right to utilize RICO's nationwide service of process provision."

"*But see Stafford v. Briggs*, 444 U.S. 527, 552-54, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting) (joined by Justice Brennan) ("Due process requires only certain minimum contacts between the defendant and the sovereign that has created the court. The issue is not whether it unfair to require a defendant to assume the burden of litigating in an inconvenient forum…").

15) There existed palpable controversies on some legal doctrines, such as jurisdiction, *statute of limitations*, *res judicata*, et cetera these days. However, there existed exceptions to them too. In essence, they were not hard-and-fixed. Factly, there was conflict of law and when such prevailed, it should be reconciled in manners more/most favorable to the Plaintiff.

16) The Plaintiff could not comprehend the rationale/s for the Court to consider the 42 USC 1981 to be all and end all in the case. There existed pertinent law to the case. However, the Court's affirmed three-prong existed. The Court knew that! Of course, the nose had been on the face. Where else would the Court rather had it be? It would not be without merit to argue or reason that the Defendant's actions lent themselves to "… discriminatory conduct sufficient to implicate Section 1981." How many of the Plaintiff's applications had been denied? More, for the first denial, the Plaintiff was not treated in manners with those similarly situated? In essence, there were

many who got their citizenship known to the Defendant under "Farmers' Amnesty," but who did not work in the farm. Immigration issues in the United States were not taboos. United States was proverbial "for land of immigrants." In all modesty, who was not? The difference between the citizenry and the Plaintiff was that their ancestors or parents left home earlier than the Plaintiff. Glory, the Plaintiffs children would not be condemned to the discriminatory treatments the Defendant condemned the Plaintiff to for citizenship. Regardless to whatever the Plaintiff's conduct was based upon or be it on lacked "good moral character," but one thing was irrefutable; the Defendant rushed to harsh judgment of the Plaintiff and denied the Plaintiff *procedural hearing* <u>precociously</u> or <u>prematurely</u> and inconsiderately. Would the Court be of the opinion that such condescension dovetailed with the rule of law?

17)     The "… plaintiff disagrees with the arrest information, …" the case was dismissed. One was not guilty of [an] allegation/s against him **until proven guilty "not on the balance of probabilities, but beyond any reasonable doubt."** That was rudimentary concept of the rule of law and natural justice. Judge Robinson should come down to the earth! Going to the court was one thing and being convicted of the charge/s was/were another thing. Strange things happened, the world over! One day, men would be pregnant, though biologically infeasible. What an invariably panoramic world! What were the Court's indicias that "… plaintiff's assertion lack information establishing that he is a member of a racial minority protected by Section 1981?" As much as the 42 Section 1981 lent itself to the case, the Plaintiff would have preferred the Court's focus on 28 Sections 1346(b) 1982 and 1361. Well, "there is no taste for choice."

18)     In the maximum rather optimum interest of justice the invaluability of Fed. R. Civ. P. 15 (a) would not be over-emphasized. However, there was nothing wrong with the Complaint, in any shape or form. On jurisdiction, immigration issues fell under the *exclusive* and not *concurrent or residual lists*. Consequently, the federal question nature of the case mountainously existed and if mountainously existed, jurisdiction existed mountainously too. [28 USC Section 1331] In that sphere, chalk would be cheese! Indeed, prostitution of time and energy never augured well for humanity. "What affected the eyes, also affected the nose," though many were diametrically ignorant of that. It would not be intelligent to engage on burial and held one's portfolio. Humanity

had common lowest and greatest common multiple/s (L/G C.M.). With candor in communications, laughing mechanically at others funeral was ironical. "What one applies to her/his ears should not be applied to the eyes." [Proverb] Whatever was encoded would be decoded to critical and creative thinkers. Prostitution of time and energy individually and collectively never augured well to humanity, at all material times. Therefore, effort should be made on effort to hitting the nails on the heads. Since jurisdiction was amongst the *ratio-decidendi*, Appeal Courts or the Third Circuit was notable for frowning at dismissal on that basis or Fedd. R. Civ. P. 12 these and those devoid of *jurisdiction discovery*. "If one removed the mice from a dog, it would be morally sound to show it to the dog." [Proverb]

## CONCLUSION

The case lent itself to practically innumerable conclusions. Glory, the Plaintiff had painstakingly and panoramically particularized on them. If the Court really needed hand holding for scientific determination of the case's surrounding circumstances, the Plaintiff with good faith or with intellectual humility, intellectual courage and faith-to-reasons provided it to the Court superfluously. Therefore and in all modesty, the Plaintiff effusively prayed the Court to reverse its defective ruling. It was a common knowledge to make judicial [*honest*] mistake/s and when presented with facts and law, one generally understood the mistake/s on one hand and on the other, one stuck to her/his gun: they meant different things altogether! Unexaggeratedly, "Sometimes, Homer nods." The Plaintiff equated the dubiously unfavorable ruling with the mindset. Besides, the lizards fell down and got up! The Plaintiff would like the *Solomonic* wisdom to prevail irrespective of whose horse was gored. The Defendant was not immune from anything as the Court thought. The august Court should resist the temptation to joining forces to smother glowing light for mankind. One should not kill; one should not kill her/his sibling/s. "A wise wo/man should allow her/his sibling/s to living like her/his contemporaries." Indeed, the source of water should not be polluted! S/He who committed evils would see them before God and s/he who killed her/his sibling/s would live by her/him self.

Furthermore, the august Court had irrefutable *in personam* jurisdiction over the Defendant or on the subject matter. The same applied to venue. Upon the Plaintiff's

honor or with candor in communications, the Plaintiff was not angling for jurisprudence tokenism over the case; indeed, there was no crying for the moon jurisprudentially. The Plaintiff could sit down majestically, tirelessly and timelessly in that kingdom central to the prodigalities of God's love and grace. "Nobody should be dead and nobody should be lost." It had been the Plaintiff cultural propensity that "the hawk and eagle should perch." The world was capacious for all! Certainly, one would learn from others if one fertilized one's mind for learning to occur according to psychologists. Indisputably, "Life is likenable to one's mother breasts and one has to share them with one's siblings." The maxim should not be doctored by saying that it was not absolute, thus if one were the only child and if the mother elected not to breast-feed. S/He who is counseled should listen, because the world is complex or awe-striken. An advice, which originated from an elderly wo/man would come to fruition in a matter of week/s, month/s and year/s. The Court's conscience should not be for auction! The Plaintiff strongly respectfully urged the august Court not to handle the case as those who rush to war and be ignorant that it entailed death. "Man and not God will be guilty" and "On the Judgement Day, the Heaven will testify unflinchingly." The Plaintiff could empathize with the august Court, but more needed to be done. It never meant irresponsibility, non-age and weakness. A wise wo/man, at all material times should not engage on what/ever would compromise her/his <u>conscience</u>, because one's <u>conscience</u> would be one's passport of passports. Life encompassed tele-guidance and mechanistic doctrines! On the case, the Plaintiff would like the Court to know that he had more than a string to his bow: in brief, the Court would not cause the Plaintiff to be homeless and deprived him the choice of living in the streets.

Respectfully submitted from Boston, Massachusetts on Saturday – April 09th – 2005.

*[signature]*

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 265 6291.

## CERTIFICATE OF SERVICE

    The Plaintiff did not see the rationale/s of serving the Defendant the head central to the Court's deprivation of the Plaintiff Due Process and Equal Protection Clauses.

_____
CHUKWUMA E. AZUBUKO,
Pro Se.





C. F. Krubwka, Esq.
P.O. Box 1361,
Boston — MA 02117.

Office of
U.S. District Court
Newark — NJ 07101-0419