IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AZUBUKO - <br>    Plaintiff <br><br> vs. <br><br> DENIS RIORDAN – DISTRICT DIRECTOR OF UNITED STATES' DEPARTMENT OF HOMELAND SECURITY - <br>    Defendant | CIVIL NUMBRT: <br> 05-095-SLR <br><br> FILED <br> MAR - 2 2005 <br> U.S. DISTRICT COURT <br> DISTRICT OF DELAWARE |

**PLAINTIFF'S MOTION FOR ESTABLISHMENT OF BASIS/BASES FOR DENIAL OF THE 'PLAINTIFF'S MOTION FOR RECONSIDERATIO OR SECOND MOTION FOR RECONSIDERATION**

The Plaintiff did receive the denial to his 'Motion for Reconsideration' type and automatic stamp dated April 4th and 25th respectively on Thursday – April 28th – 2005. These would be the bases for the head:

01)   The Plaintiff could have taken other available legal measures besides the head. It was proverbially known that "The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." The motion established beyond doubt clear error of facts and law. There was not an iota of basis for the dismissal of the case that the Plaintiff did not prove to be diametrically wrong. For example, Judge Robinson ruled thus: "With this in mind …dismissed for failure to state a claim if it appears 'beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." That was purely untrue! Why did the Plaintiff file the case in the first place? The Plaintiff would like to be sworn in for the citizenship in 2005 and not 2009.

02)   On page 7 of the [original] dismissal Order, it was stated: "Based on this authority, plaintiff was required to file for judicial review of the naturalization determination in the United States District Court located in the state of his residence, Massachusetts, not Delaware." More, exhaustion of administrative remedies was

directory and not mandatory. In essence, it was <u>optional</u> and not <u>mandatory</u>. It was doctrinally proven in the 'Plaintiff's Motion for Reconsideration.' On jurisdiction, monumental mistake was made and thunderously cried for revision. In the case of *Piker, et al. vs. Harold Roche Holdings Ltd.*, (3d Nos. 00-4318 and 01-1562) (appealed from the United States District Court for the **District of New Jersey** (D.C. Civ. No. 99-cv-05627) read thus, in part:

"Where Congress has spoken by authorizing nationwide service of process, therefore, as it has in the Securities Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits. See *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Following this reasoning, the district courts within this Circuit have repeatedly held that a "national contacts analysis is appropriate "when appraising personal jurisdiction in a case arising under federal statute that contains a nationwide service of process provision. *AlliedSignal, Inc. v. Blue Cross of Calif.*, 924 F. Supp. 34, 36 (D.N.J. 1996); see also *Green v. William Mason & Co.*, 996 F. Supp. 394, 396 (D.N.J. 1998) ("[A]n assessment of personal jurisdiction under (a statutory provision authorizing nationwide service of process) necessitates an inquiry into the defendant's contacts with the national forum."). We too are persuaded by the reasoning of our prior decisions on the subject, and consistent with several of our sister courts of appeals, hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process…"

03)     More on jurisdiction, it would be advantageous to note that the case had bearings on federal question. [28 Section 1331] The truth could be tested! There was nothing to associate with abracadabra vis-à-vis the Plaintiff's motion. In essence, they were flatly scientific and facts and law were not [knowingly] distorted.

04)     On the case, the Plaintiff requested for jury trial. It was a constitutional right and should not be denied without moral qualm. Reiteratively and with candor in communications, the "system" would work immeasurably for all by honest concerted effort and not on the bases of *"holier than thou"* and jurisprudence fastidiousness or abracadabra.

## CONCLUSION

Obviously, mistakes would be made and all things being equal, they should be corrected if intellectual humility, intellectual courage and faith-to-reasons were given chances. There existed no monopoly to critical and creative thinkings. Indeed, "Sometimes, Homer nods." In essence, anyone was prone to mistakes; it could be *honest*

*mistakes* [as legally provided]  The Plaintiff had little or no time for casuistry.  However, obvious jurisprudence mistakes had been made and they thunderously cried for revision. The invaluability of Equal Protection and Due Process Clauses would not be trivialized.

Respectfully submitted from Boston, Massachusetts on Friday – April 29th – 2005.

_____
CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone Number: (617) 265 6291.

### CERTIFICATE OF SERVICE

    The preemptive jurisprudence made it impossible for the Plaintiff to serve the Defendant with the head.

_____
CHUKWUMA E. AZUBUKO,
Pro Se.



kunuma E. Azubuko
P.O. Box 1351
Mass. 02117

 

Office of the Clerk
U.S. District Court
844 N. King Street,
Lockbox 18,
Wilmington, DE 19801-3570